## Case No. 7,421.

In re JOHNSTON et al.

[8 Ben. 191; 1 12 N. B. R. 345.]

District Court, S. D. New York. July, 1875.

---

1 [Reported by Hon. William Cranch, Chief Judge.]

1 [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

James C. Carter, for the marshal.
Henry Stanton, for John J. Johnston.

BLATCHFORD, District Judge. In this case, which is one in involuntary bankruptcy, a provisional warrant was issued to the marshal on the 21st of December, 1874. On the same day one Newcome was deputed by the marshal to execute the warrant, and took possession thereunder of the property of the bankrupts contained in their stores, being the first floors and basements of two buildings, and the second floor of one of those buildings. At the time Newcome took possession of such property, it consisted of a large stock of merchandise, being hats, caps, furs, gloves, umbrellas, parasols, travelling bags, millinery goods, &c., and the fixtures and furniture of the stores, and $79.81 in cash. The cost of the merchandise was said to be $70,000. The two buildings were occupied in part by other tenants, whose apartments were separated from the apartments of the bankrupts by a board partition, which extended about three-quarters of the distance from the floor to the ceiling of said apartments. Said stores were also accessible by doors and windows opening upon two streets. Newcome, on the day he so took possession of the property, placed one Poinier in charge of it, to assist him in watching and taking care of it. Poinier remained in charge of it, with Newcome, until the 19th of February, 1875. During all that time Poinier faithfully discharged the duty required of him. After taking possession of the property, Newcome employed Poinier and three persons named West, Butler and Draper, to assist him in taking an inventory of the property. Newcome and those four persons were so employed on nine days in December and January,

Newcome and Poinier being so employed for ten hours on each of said nine days, West for eight hours on each of said nine days, and Butler and Draper for not less than six hours, on an average, on each of said nine days. In addition, Newcome was at the stores of the bankrupts on every day, except eight days, until the 13th of February, while the property was in his possession, including Christmas and Sundays. On each and all of such days, including Christmas and Sundays, Newcome was actually and necessarily employed in giving his personal attention to the proper care of the property of the bankrupts, for two hours of each day. On the 13th of February, Newcome, with the assistance of Poinier, commenced to turn over the property to the assignee in bankruptcy, and to assist the assignee in verifying the inventory of it which Newcome had taken, and was so employed for six days, on each of which Newcome and Poinier were actually and necessarily employed for ten hours. The inventory contained 75 folios, and a copy of it was furnished to the assignee. While the property was in the custody of Newcome, he received various cheques and drafts representing money due to the estate of the bankrupts, which were collected by the marshal, to the amount of $6,600, and which money was afterwards turned over to the assignee.

The affairs of the bankrupt estate having been settled, and the property having been returned by the assignee to the bankrupt Johnston, subject to the payment by him to the marshal of the fees of the marshal for his services in the matter, a bill of such fees has been taxed by the clerk, under a special order. Each party appeals.

Item 1. The clerk disallowed a charge for 61 days' services of Newcome in taking care of the property, from December 21st to February 19th, at $2.50 per day—$152.50. The objections taken to it were, that it was not warranted by the fee bill in force at the time of the taxation, May 28th, 1875, and that it was, in fact, an item for taking an inventory. The clerk sustained the objections and the marshal appeals. The marshal contended, before the clerk, that the bill should be taxed under the provisions of law and the rules in force at the times the several services were rendered, all of them having been rendered prior to the 12th of April, 1875, when the new general orders in bankruptcy were adopted. For Johnston, it was contended, before the clerk, that the bill should be taxed entirely under the provisions of rule 30 of the new general orders. The clerk ruled that the proceedings in bankruptcy were still pending, and that, therefore, the taxation must be controlled by the provisions of law, and the general orders, in force at the time of the taxation.

Item 2. The bill charged $152.50 for like services of Poinier with those charged for Newcome in item 1. The clerk allowed $115

of the item, and disallowed $37.50, such disallowance being for 15 days' services, at $2.50 per day, and being based on the ground that such services were included in items 7 and 8 for taking inventory and verifying inventory. Both parties appeal. The grounds of objection taken to the allowance of any part of the item were those taken to item 1, and, also, that the services were not necessary, and that Poinier rendered no services as keeper.

Item 3. The clerk disallowed a charge of $20 for the services of West, one of $10 for the services of Butler, and one of $10 for the services of Draper. The marshal appeals. The grounds of objection taken to the allowance of any part of this item were those taken above; and, also, that the services were included in the item for taking inventory.

Item 4. The clerk disallowed a charge of $1,100 for custody of property,—being 2½ per cent on $5,000, $125; and 1½ per cent on $65,000, $975. The marshal appeals. The ground of objection taken to the allowance of any part of this item was, that it was not authorized by the new general orders.

Item 5. The clerk allowed $166 as commissions on money received, being $6,600, as follows: $1,000, at 5 per cent., $50; $4,000, at 2½ per cent., $100; $1,600, at 1 per cent., $16. Johnston appeals. The ground of objection taken to this allowance was, that the charge was not authorized by the law, or by the new general orders.

Item 6. The clerk disallowed a charge of $352.50, as commissions on the value of the property, at $70,000, as follows: $500, at 1 per cent., $5; $69,500, at ½ per cent., $347.50. The marshal appeals. The objection to this item was a general one.

Item 7. The clerk allowed $360 for taking inventory, being 360 hours, at $1 per hour. Johnston appeals. The ground of objection taken to this item was, that it was subject to a deduction of the amount before allowed to Poinier. The clerk ruled that the time of Poinier included in this item was deducted from his allowance.

Item 8. The clerk allowed $120 for verifying inventory with assignee, being for 120 hours, at $1 per hour. Johnston appeals. The objection taken to this item was, that it was not provided for by the law or the new general orders. The marshal explained that the item was a more full specification of the personal attention of the marshal in taking care of the property. He referred, probably, to item 9.

Item 9. The clerk allowed $60 for personal attention, for 60 hours, at $1 per hour. Johnston appeals. The objection taken to this item was, that no personal attention had been proved, other than what had been allowed for. The only other allowance for personal attention is what is embraced in some one or more of the foregoing items.

Item 10. The clerk allowed $7.50 for copy of inventory, being for 75 folios, at 10 cents per folio. Johnston appeals. No ground of objection to this item was stated.

Item 11. The clerk allowed $4.82, being 2 per cent. commission on $241 allowed for disbursements. Johnston appeals. No ground of objection to this item was stated.

The Revised Statutes were in force when the services in this case were rendered. Section 5126 provides as follows, in regard to fees to the marshal, as messenger, after prescribing, in three items, specific fees to him, for service of warrant, and for travel, and for written notices to creditors: "Fourth. For custody of property, publication of notices and other services, his actual and necessary expenses, upon returning the same in specific items, and making oath that they have been actually incurred and paid by him, and are just and reasonable, the same to be taxed and adjusted by the court, and the oath of the messenger shall not be conclusive as to the necessity of such expenses. For cause shown, and upon hearing thereon, such further allowance may be made, as the court in its discretion may determine."

Section 4,990 of the Revised Statutes, as amended by section 18 of the act of June 22d, 1874, provides that the justices of the supreme court may, from time to time, subject to the provisions of the title in regard to bankruptcy, rescind or vary any of the general orders in bankruptcy theretofore adopted by them, as then existing, and may frame, rescind or vary other general orders "for regulating the fees payable, and the charges and costs to be allowed, with respect to all proceedings in bankruptcy before such courts," (the district courts in bankruptcy), "not exceeding the rate of fees now allowed by law for similar services in other proceedings."

Section 5,127 of the Revised Statutes provides that the enumeration of the fees in section 5,126 shall not prevent the justices of the supreme court from prescribing a tariff of fees for all other services of the officers of courts of bankruptcy, or from reducing the fees prescribed in section 5,126, in classes of cases to be named in their general orders.

Section 18 of the act of June 22, 1874, provides that, from and after its passage, "the fees, commissions, charges and allowances, except actual and necessary disbursements of, and to be made by, the officers, agents, marshals, messengers, assignees and registers, in cases of bankruptcy, shall be reduced to one-half of the fees, commissions, charges and allowances heretofore provided for or made in like cases; provided that the preceding provision shall be and remain in force until the justices of the supreme court of the United States shall make and promulgate new rules and regulations in respect to the matters aforesaid, under the powers conferred upon them" by sections 4,990 and 5,127 of the Revised Statutes,

"and no longer, which duties they shall perform as soon as may be."

Under these provisions the power of the justices of the supreme court to prescribe fees, commissions, charges and allowances for the officers, agents, marshals, messengers, assignees and registers, in cases of bankruptcy, is plenary, with the limitation, that the fees cannot exceed the rate allowed by law, at the time of the enactment of the Revised Statutes, for similar services in other proceedings. Prior to the enactment of section 18 of the act of June 22d, 1874, their power in this respect was further restricted, so that they could not alter the fees established by the statute or by law, but that restriction was removed by that section.

Under the power thus conferred upon them, the justices of the supreme court promulgated, on the 12th of April, 1875, a new general order No. 30, in regard to fees, which provides as follows: "The fees of the marshal shall be the same as are allowed for similar services by the general fee-bill, in section 829 of the Revised Statutes, as modified by section 5126, including additional fees allowed by the latter section for distinct services; but no allowances shall be made under the last clause of section 5126, commencing with the words: 'For cause shown.'" The new general order No. 30 then goes on to prescribe specific fees for three other distinct services of the marshal, and then adds: "No other allowance to be made for custody of property, except for actual disbursements, which shall, in all cases, be passed upon by the court."

The provisions in regard to the fees of the marshal are thus entirely plain. His fees for services are to be the same as are prescribed by section 829 of the Revised Statutes for "similar services," as modified by section 5126, including the additional distinct fees allowed by section 5126. The expression "similar services," according to the use of those words in section 4990 of the Revised Statutes, means, in the new general order No. 30, "similar services in other proceedings." But the fees to be allowed are all to be specific fees prescribed by statute and by the new general order No. 30, and the power of the court to make further discretionary allowances is taken away. Furthermore, in respect to custody of property by the marshal, (except as regards the marshal's personal attention, hereafter referred to), actual disbursements only are to be allowed, to be passed upon by the court. The items in question in this case must be disposed of according to these rules.

Item 1. The 61 days' services of Newcome, charged for at $2.50 per day, were for custody of the property. The marshal cannot be allowed anything for the services of a keeper or deputy in taking care of property, unless he has actually paid it. But it does not follow that he can be allowed all he has paid, or that he can be allowed anything merely because he has paid it. The taking of property under a provisional warrant in bankruptcy is an analogous or similar service to that of serving an attachment in rem on a libel in admiralty. Section 5126 allows $2 for the service of a warrant. Section 829 allows $2 for the service of an attachment in rem on a libel in admiralty. Section 829 allows for the necessary expenses of keeping property attached or libelled in admiralty, not exceeding $2.50 a day. For the keeping or custody of property taken under a provisional warrant in bankruptcy, the marshal is, therefore, entitled to be allowed what is necessarily and actually disbursed and paid by him to a keeper or keepers; but the entire amount cannot exceed $2.50 a day. By the vouchers rendered, the marshal appears to have actually paid to Newcome $152.50, and to Poinier $152.50, being for 61 days' services of each, in taking care of the property, from December 21st to February 19th, at $2.50 per day. On the proof offered, the services of a keeper seem to have been proper and necessary. But, at the rate of $2.50 per day, which is the rate the marshal adopted, allowance can be made for the services of only one keeper. This allowance should be for 61 days, and amounts to $152.50. But, on the evidence, that amount should be allowed for the services of Poinier as keeper, and not for any services of Newcome as keeper. Item 1 was, therefore, properly disallowed.

Item 2. I think the entire amount of $152.50 should be allowed for the services of Poinier in taking care of the property. If Poinier was employed during any part of the same time in taking an inventory, and is entitled to be paid for taking the inventory, that ought not to diminish his allowance for taking care of the property.

Item 3. The $40 covered by item 3 was properly disallowed. Nothing can be allowed for any services of West, Butler or Draper, except in taking the inventory, and the allowance therefor must be made under that head.

Item 4. The charge of $1,100 for custody of property, by way of commissions on its value, at $70,000, was properly disallowed. It was not a disbursement, nor is it a charge by the hour for personal attention of the marshal in taking care of the property. Its allowance is, therefore, expressly forbidden by the provisions of the new general order No. 30, before cited.

Item 5. The clerk appears to have allowed commissions on the $6,600 at the rate allowed by section 5100 of the Revised Statutes, to assignees, as an allowance for their services, in the shape of a commission on moneys received and paid out by them. I can find no warrant for this allowance. If there is a fee allowed by section 829 of the Revised Statutes for a similar service, such fee is allowable for receiving and paying over the $6,600.

Section 829 allows to the marshal for serving final process, seizing or levying on property, advertising and disposing of the same by sale, or otherwise, according to law, receiving and paying over the money, the same fees and poundage as are or shall be allowed for similar services to the sheriffs of the states, respectively, in which the service is rendered. Here there was no final process, and no sale, and nothing to which the term "poundage," as that word is properly understood, is applicable. So, too, section 829 allows to the marshal for the sale of property in admiralty, and for receiving and paying over the money, 2½ per cent. on any sum under $500, and 1¼ per cent. on the excess of any sum over $500. But here there was no sale of property. Section 829 also provides, that, "when the debt or claim in admiralty is settled by the parties without a sale of the property, the marshal shall be entitled to a commission of one per centum on the first five hundred dollars of the claim or decree, and one-half of one per centum on the excess of any sum thereof over five hundred dollars, provided that, when the value of the property is less than the claim, such commission shall be allowed only on the appraised value thereof." The theory of this allowance is that the marshal, in an admiralty suit in rem, has attached the property, and holds it, and that then, without a sale of the property by the marshal, the controversy is so disposed of by the parties, that the marshal is called upon to give up possession of the property, so that he loses the fees for selling it and for receiving and paying over the money. In such a case he is allowed a commission, which is intended as a compensation for his risk and responsibility, just as the poundage allowed on final process, and the percentage allowed on a sale of property in admiralty, are each of them a compensation for risk and responsibility, not merely in selling the property, but in holding possession of it under process. Personally he can have no other compensation for keeping safely the property; for, the expense of keeping it, not exceeding $2.50 a day, can be allowed only when paid to a keeper. The new general order No. 30 superadds compensation by the hour, for personal attention, when actually and necessarily employed in taking care of the bankrupt's property. I think that the service of the marshal in this case, in respect to the $6,600. is a similar service to that he renders in admiralty in regard to property of like value which comes into his hands under an attachment in rem, and that he is entitled to a like fee, being commission on the $6,600, of one per cent. on the first $500, and one-half of one per cent. on $6,100. The commission is given by section 829 for the service of the marshal in respect to the property which he relinquishes, in taking the risk and responsibility which he takes in regard to it while he holds it. The allowance to him should, therefore, have been $35.50 instead of $100.

Item 6. The views stated under the head of item 5 apply to the merchandise, valued at $70,000, as well as to the $3,600 collected, and the charge of $347.50 ought to be allowed.

Item 7. The new general order No. 30 provides, that "the marshal shall be allowed for each hour necessarily employed in making inventory of bankrupt's property," one dollar. The evidence shows that 360 hours were employed in taking the inventory. The marshal has a right to be allowed one dollar per hour for the time of persons whom he employs to take an inventory, which is necessarily employed in taking it. I see no reason why the marshal should not be allowed for the 90 hours during which Poinier was employed in taking the inventory, even though Poinier be allowed fees as keeper for the same time. Poinier supplied, in taking the inventory, the place of another person, and was discharging the duties of keeper at the same time.

Item 8. I see no authority for the allowance of the charge for time spent in verifying the inventory with the assignee.

Item 9. I do not think anything should be allowed for personal attention. The allowance given by the new general order No. 30, is an allowance to "the marshal for each hour actually and necessarily employed in personal attention in taking care of bankrupt's property." This is, I think, an allowance to be made only when the marshal himself, in person. actually and necessarily gives his personal attention in taking care of the bankrupt's property, and that it does not cover personal attention by a deputy. If it could be construed to cover personal attention by a deputy, several deputies might be detailed to take care of property, and might give their personal attention and show that they were actually and necessarily employed, and the allowance therefor at $1 per hour, for day and night. would swell to an extravagant amount what would really be an allowance for custody of property and for the expense of keeping property, when such allowance is. as has been shown, carefully restricted by other provisions. In the present case it is not shown that the marshal himself gave any actual personal attention in taking care of property.

Item 10. I think the copy of the inventory furnished to the assignee was properly charged for. at 10 cents a folio. Section 829 of the Revised Statutes allows to the marshal for copies of papers furnished at the request of any party, ten cents a folio. In this case the copy was furnished to the assignee, and, as he received it, it must be regarded as having been furnished at his request.

Item 11. Section 829 of the Revised Statutes allows to the marshal for "disbursing moneys to jurors and witnesses, and for other expenses, two per centum." This authorizes the charge of a commission of 2 per cent. on the disbursements made by the marshal for the items of expenses allowed in the bill as taxed. The clerk allowed 2 per cent. on $241, that

being the amount of disbursements he allowed. The disbursements I allow are $279.32, on which a commission of 2 per cent. is $5.59. From the foregoing conclusions it results that the bill should be taxed at $1,067.36 instead of $992.09, and I have so taxed it.